**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| GLEN CRAIG, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 3:18-cv-01713-MJR-SCW |
| | ) | |
| v. | ) | **DEFENDANT'S MOTION FOR AN AWARD** |
| | ) | **OF ATTORNEY'S FEES UNDER 17 U.S.C.** |
| POPMATTERS MEDIA, INC. | ) | **§ 505 AND 28 U.S.C. § 1927** |
| | ) | |
| Defendant. | ) | |

Richard Liebowitz ("Liebowitz"), America's most prolific copyright litigator, brings an unprecedented volume of strike lawsuits over trumped-up infringement claims to reap unwarranted settlements. Representing plaintiff Glen Craig ("Craig") in this lawsuit, over a bogus claim in the wrong court, his vexatious litigation-mill tactics were on full display until Defendant PopMatters Media, Inc. ("PopMatters") rejected his extortive demands.

PopMatters has no presence in this judicial district, so personal jurisdiction and venue were improper; it used Craig's photograph under a license, so the claim had no merit; and Craig never overcame the presumption that the photograph was taken as a work for hire, so he lacked standing to sue. Ignoring these fatal flaws, and multiple warnings that his delays would force PopMatters to move to dismiss, Liebowitz let the case languish for months, following his *modus operandi*. He knows that his odds of reaping a settlement rise as a defendant's expenses mount, regardless of the merits; and he reckons that if a defendant fights back, he can always walk away.

On the verge of PopMatters' motion to dismiss, Liebowitz filed a one-sentence notice of dismissal in December, renewing the action in the Northern District in August. He walked away from that second action two weeks ago, once PopMatters moved under Rule 41(d) for an award of fees already incurred. Under Rule 41(a)(1)(B), the "two-dismissal" rule, that made PopMatters the prevailing party, entitled to claim its fees in each case under the Copyright Act, 17 U.S.C. § 505. To deter Liebowitz's chronic abuse of the courts, he must be held personally liable for those fees under the vexatious litigant statute, 28 U.S.C. § 1927, or the Court's own inherent authority.

## STATEMENT OF RELEVANT FACTS

Craig is a photographer based in New York City. Doc. 1 ¶ 5. On assignment for the short-lived magazine *Zygote* in June 1970, he took a series of photographs of Miles Davis, including the photograph ("Photograph") at issue in this action, during Davis' four-night residency at the Fillmore East. *Id.* ¶ 7; Declaration of Dan Booth ("Booth Decl.") ¶ 3, Ex. A. His Davis series then lay dormant until the 2014 release of Miles Davis, *Miles at the Fillmore - Miles Davis 1970: The Bootleg Series Vol. 3* ("*Fillmore*"), a four-CD box set of recordings of those Fillmore East concerts. By an agreement dated February 18, 2014, Craig licensed Sony Music Entertainment's Legacy Recordings division ("Legacy") to use the Photograph and twelve of his other Davis photographs "inside the music packaging" of *Fillmore*, and further licensed the Photograph and one of the others "for publicity." Booth Decl. ¶ 5, Ex. B p. 1. See also Ex. B p. 4 (permitting "Packaging & Publicity Usage" of the Photograph). Legacy released *Fillmore* on March 25, 2014. Booth Decl. ¶ 6, Ex. C. One Craig photograph appears on the CD digipak's back cover; twelve more by Craig are in the *Fillmore* booklet, including the Photograph. Booth Decl. ¶ 7, Ex. D p. 9. To promote *Fillmore*, Legacy sent advance copies and press materials to media outlets, providing a copy of the Photograph with "editorial uses" by "Internet review outlets" expressly permitted. Booth Decl. ¶ 8, Ex. E, Declaration of Karen Zarker ("Zarker Decl.") ¶ 3.

PopMatters is a corporation based in Chicago, Illinois. Doc. 1 ¶ 6; Zarker Decl. ¶ 2. It runs popmatters.com, an independent website of cultural criticism and analysis. *Id.* PopMatters received Legacy's promotional materials and ran a *Fillmore* review on its website on March 27, 2014. Zarker Decl. ¶¶ 3-4. It ran a review of the *Miles Ahead* soundtrack on its website on April 20, 2016, with the Photograph. *Id.* ¶ 5, Doc. 1 ¶ 10, Doc. 1-3.

Through Liebowitz, Craig initiated suit against PopMatters in this Court on September 11, 2018, alleging infringement of the Photograph copyright. Doc. 1 ¶ 13. On September 27, 2018, PopMatters was served process, counsel for the parties conferred, and PopMatters served a Rule 68 offer of judgment on Craig for $800. Zarker Decl. ¶ 7, Booth Decl. ¶ 9, Ex. F p. 4.

Liebowitz made a $25,000 counter-offer on October 3, 2018. Booth Decl. ¶ 10, Ex. F p. 4. PopMatters explained that any profits attributable to its use of the Photograph were less than $4, and that the market value of a hypothetical license for the use would have been $154 or less. *Id.*, Ex. F pp. 3-4. Negotiation proved fruitless. PopMatters further explained to Liebowitz on October 4, 2018 that personal jurisdiction and venue were improper, and that it would move to dismiss under Rules 12(b)(2) and (3) unless he withdrew the claim, in an email stating in part:

> Can you give me a good reason why you expect my client to defend a claim in the federal courthouse in East St. Louis? That is about 300 miles from the address you have identified, in the complaint, as PopMatters's place of business. The Dirksen Federal Building in Chicago, by contrast, is about six miles from the PopMatters address. They are not located in the Southern District by any definition and both personal jurisdiction and venue are improper. Courts in the Seventh Circuit analyze venue by treating each district as if it were its own state. A defendant must reside, or be found, in a district with which it has sufficient contacts to be rendered amenable to personal jurisdiction. Incorporation in the state, but outside the district, is insufficient. Furthermore, the copyright venue statute, 28 U.S.C. § 1400(a), governs all copyright claims, not Section 1391's general venue provision. And under Section 1400, the focus is whether the defendant resides (or may be found) in a "particular judicial district," not somewhere else in the state. *Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co.*, 8 F.3d 441, 445-46 (7th CIr. 1993). PopMatters resides in Chicago, maintains its sole place of business in Chicago, and transacts no business in the Southern District. The result should be obvious.
>
> Unless I hear from you by close of business Monday, October 8, that you will withdraw the claim from the Southern District, I will be forced to move to dismiss under Fed. R. Civ. P. 12(b)(2) and (3). You can expect to lose that motion, because suing in that District is frivolous on its face. So if you make me draft and file the motion, I promise you this: I will move for an award of every penny of attorney's fees and costs that you impose on my client by making me litigate over your obviously baseless allegations of jurisdiction and venue.

Booth Decl. ¶ 11, Ex. F p. 2. Liebowitz replied half an hour later, "We are happy to transfer venue if your client wishes and will litigate in the Northern District. Please let me know and I can put together a short letter. Are you admitted in Illinois?" *Id.*, Ex. F. p. 1. On October 8, 2018, when Liebowitz had taken no action on his offer to transfer, PopMatters' counsel told him, "If I have to take on the senseless, wasteful costs of a motion to dismiss in the Southern District,

I will also move to have you sanctioned and forced to bear the price of my services." *Id.* ¶ 12; Ex. F p. 1. Liebowitz dashed off a note to the Court stating, "We represent Plaintiff Glen Craig, in the above in captioned case. Instead of engaging in motion practice on venue, the parties respectfully request that the matter be voluntarily transferred to the Northern District of Illinois." *Id.* ¶ 13; Ex. G. Though the letter request was headed "VIA ECF," it was not filed via ECF like a motion, but submitted to chambers via email like a proposed document. *Id.*

On October 9, 2018, PopMatters' counsel explained to Liebowitz that his letter would not suffice and a motion or a notice of dismissal would be required, in an email that stated in part:

> In the Southern District of Illinois, an email to chambers is not sufficient to request relief from the Court. A request must be filed with the Clerk of Court via ECF as a motion, unless the Court has specifically authorized filing by email. If you did not get prior approval from the Court, your unfiled email does not comply with the local rules.
>
> First, the request must be filed electronically. The Court's Electronic Filing Rules mandate that all documents must be electronically filed, and attorneys must use the ECF filing system unless specifically exempted for good cause shown. See Rules 1 and 5: https://www.ilsd.uscourts.gov/documents/ECFRules.pdf. Second, "an email to a judge's staff member is not an appropriate means of filing a document." Marlow v. Sawyer, 2018 U.S. Dist. LEXIS 47457, at n.1 (S.D. Ill. Mar. 22, 2018) (citing Fed. R. Civ. P. 5(d)(2)). And, the letter you sent did not even attempt to satisfy the standard set forth in 28 U.S.C. § 1404(a). So even if it were construed as a motion, there is no reason to expect it to be granted. The Court cannot be expected to rule on an improperly filed email, or to rule on any motion within a week.

Booth Decl. ¶ 14, Ex. H p. 2. Liebowitz responded that day, "Chambers is handling it, just spoke with them. It will be transferred and if they have any issues they will let me know today or tomorrow." *Id.* On October 10, 2018, PopMatters' counsel asked Liebowitz to agree not to seek entry of default until at least three weeks after notice of transfer. *Id.*, Ex. H p. 1. Liebowitz responded that day, "We will agree not enter default. I will let you know when it is transferred." *Id.* That same day, PopMatters' counsel enquired with Liebowitz for more information about the copyright registration identified in the initial Southern District complaint.

While we wait, I see that Mr. Craig has several copyright registrations for photographs of Miles Davis, only one of which is at issue in the complaint: Registration No. VAu 1-192-067. Can you provide copies of the application and deposit materials so we can identify which photographs are covered by that registration?

*Id.* Liebowitz did not respond to the inquiry. *Id.*

On November 15, 2018, Liebowitz sent another email to chambers: "Just following up on the voluntary transfer to the Northern District of IL?" Booth Decl. ¶ 16; Ex. I p. 2. The Court's law clerk responded later that day: "You need to file a written motion, the Court does not entertain requests of this nature via our proposed documents box." *Id.* Liebowitz took no action in response to the Court's directive to file a written motion over the following four weeks. *Id.*

On December 12, 2018, PopMatters' counsel told Liebowitz it would be obligated to move to dismiss if he did not file a motion to transfer by close of business on December 14, 2018. Booth Decl. ¶ 17; Ex. I p. 1. Liebowitz responded, "Instead of doing the motion we are just going to refile." *Id.* Within the hour PopMatters' counsel replied, in pertinent part:

You may file a notice of dismissal pursuant to Fed. R. Civ. P. 41 in the Southern District.

Please confirm that this is what you mean by "Instead of doing the motion we are just going to refile." And please confirm that by close of business Friday you will file your Rule 41 notice, or a motion to transfer, and send us a copy as filed.

*Id.* On Saturday, December 15, 2018, having received no response from Liebowitz, PopMatters began to prepare a motion to dismiss under Fed. R. Civ. P. 12(b)(2), 12(b)(3), 12(b)(6), and 41(b), based on the lack of personal jurisdiction, improper venue, failure to state a claim, and failure to prosecute. Booth Decl. ¶ 18. Liebowitz filed a one-sentence notice of dismissal on December 17, 2018. Doc. 8. The Court closed the action the next day. Doc. 9. Liebowitz did not inform PopMatters that the case had been dismissed; PopMatters learned of the dismissal as its counsel prepared to finalize its motion. Booth Decl. ¶ 19, Zarker Decl. ¶ 8.

Craig refiled the claim in the United States District Court for the Northern District of Illinois on August 19, 2019, where the case was denominated Case No. 19-cv-5596. Booth Decl. ¶ 20, Ex. J. The complaint in the second action raised the same claim of copyright infringement, by the same use of the same Photograph, predicated on the same copyright registration, No. VAu1-192-067. *Id.*; see Doc. 1-2, Doc. 6. PopMatters' counsel offered to waive service on August 22, 2019, but Liebowitz had the refiled complaint served on PopMatters on August 25, 2019. Booth Decl. ¶ 21, Ex. K. In an August 28, 2019 email, PopMatters outlined for Liebowitz two of the defenses flagged in 2018, licensed use and invalid copyright registration. In pertinent part, PopMatters wrote:

> Mr. Craig licensed the photo along with several others to Sony/Legacy, which published them in the booklet to the Miles Davis box set *Miles at the Fillmore*, released in March 2014. In turn, Sony/Legacy licensed the photo for promotional use by media outlets and sent the photograph to PopMatters for use online. By definition, a licensed publicity use is not an infringement. The complaint also fails to mention that when Mr. Craig obtained a copyright registration in November 2014, he falsely claimed that the photograph was part of an unpublished collection, though it had been published in connection with the *Fillmore* release. A knowing, material inaccuracy renders the registration invalid.

*Id*. That day, Liebowitz responded by email: "I accidentally put the incorrect registration number in the complaint it should be VAu001160156. The photo was registered unpublished before the photograph was published." *Id.* He also extended a $10,000 settlement offer. *Id.* He did not address PopMatters' license defense. Ex. K. Relying on that belatedly identified copyright registration, Liebowitz filed an amended complaint in the second action on September 10, 2019; it was never served on PopMatters. Booth Decl. ¶ 22.

On October 18, 2019, PopMatters' counsel entered appearances in the second action and moved under Rule 41(d) for a stay until Craig paid the fees PopMatters had incurred in this first action. *Id*. ¶ 23. Liebowitz filed a notice dismissing the second action the next day, October 19, 2019. *Id*., Ex. L. The second action was closed on October 21, 2019. *Id*. ¶ 24, Ex. M.

## LEGAL STANDARDS

"A plaintiff may dismiss a federal suit without prejudice to refiling. That privilege may be used only once. '[I]f the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.'" *Dvorak v. Granite Creel GP Flexcap I, LLC*, 908 F.3d 248, 249 (7th Cir. 2018) (quoting Fed. R. Civ. P. 41(a)(1)(B)). "The purpose of the 'two dismissal' rule, pointed out in numerous decisions, is to prevent unreasonable abuse and harassment by plaintiff securing numerous dismissals without prejudice." *Sutton Place Dev. Co. v. Abacus Mortg. Inv. Co.*, 826 F.3d 637, 640 (7th Cir. 1987) (internal quotations and citations omitted). "The risk of repetitive litigation and forum-shopping is sharply limited by Rule 41(a)(1)(B)." *CFE Grp., LLC v. FirstMerit Bank, N.A.*, 809 F.3d 346, 351 n. 1 (7th Cir. 2015). The second dismissal is "with prejudice." *Id.*

The Copyright Act authorizes the Court to award, "in its discretion … a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. A voluntary dismissal with prejudice confers prevailing party status on a copyright infringement defendant, permitting a claim for attorney's fees. *Bell v. Lantz*, 825 F.3d 849, 850 (7th Cir. 2016); *Riviera Distribs. v. Jones*, 517 F.3d 926, 927-29 (7th Cir. 2008); accord *FM Indus. v. Citicorp Credit Servs., Inc.*, Civ. A. No. 07 C 1794, 2009 U.S. Dist. LEXIS 9263, *7-8 (N.D. Ill. Feb. 4, 2009), *aff'd*, 614 F.3d 335 (7th Cir. 2010) (reversing in part on other grounds).

"[A] favorable ruling on the merits is not a necessary predicate to find that a defendant has prevailed." *CRST Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642, 1646 (2016).

> Common sense undermines the notion that a defendant cannot 'prevail' unless the relevant disposition is on the merits. … The defendant, of course, might prefer a judgment vindicating its position regarding the substantive merits of the plaintiff's allegations. The defendant has, however, fulfilled its primary objective whenever the plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's decision.

*Id.* While *CRST Van* involved a claim for fees under the Civil Rights Act, the term "prevailing party" is interpreted "in a consistent manner" across fee-shifting statutes. *Id.* at 1646.

Courts analyzing fee requests under Section 505 of the Copyright Act are guided by several nonexclusive factors approved by the Supreme Court: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n. 19 (1994) (quoting *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 156 (3d Cir. 1986)). Section 505 "grants courts wide latitude to award attorney's fees based on the totality of the circumstances in a case." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016).

> The two most important considerations in determining whether to award attorneys' fees in a copyright case are the strength of the prevailing party's case and the amount of damages or other relief the party obtained. If the case was a toss-up and the prevailing party obtained generous damages, or injunctive relief of substantial monetary value, there is no urgent need to add an award of attorneys' fees. But if at the other extreme the claim or defense was frivolous and the prevailing party obtained no relief at all, the case for awarding attorneys' fees is compelling.

> *Assessment Techs. of WI, LLC v. Wire Data, Inc.*, 361 F.3d 434, 436-37 (7th Cir. 2004).

> When the prevailing party is the defendant, who by definition receives not a small award but no award, the presumption in favor of awarding fees is very strong. … For without the prospect of such an award, the party might be forced into a nuisance settlement or deterred altogether from enforcing his rights.

> *Id*. at 437 (citing *Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503, 506 (4th Cir. 1994)).

"A prevailing defendant in a copyright suit is presumptively entitled to an award." *Edgenet, Inc. v. Home Depot U.S.A., Inc.*, 658 F.3d 662, 667 (7th Cir. 2011). "The party responsible for creating excessive legal costs must bear them itself in the end." *Riviera*, 517 F.3d at 929.

An attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

> [A] court has discretion to impose § 1927 sanctions when an attorney has acted in an "objectively unreasonable manner" by engaging in "serious and studied disregard for the orderly process of justice," *Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 119 (7th Cir. 1994); pursued a claim that is "without a plausible legal or factual basis and lacking in justification," *id.*; or "pursue[d] a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound," *Kapco Mfg. Co. v. C & O Enters., Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989).

*Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006).

"A lawyer's subjective bad faith is a sufficient, but not necessary, condition for § 1927 sanctions; objective bad faith is enough." *In re Lisse*, 921 F.3d 629, 641 (7th Cir. 2019) (citing *Hunt v. Moore Bros., Inc.*, 861 F.3d 655, 659 (7th Cir. 2017). "Attorneys demonstrate objective bad faith when they pursue 'a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound.'" *Id.* (quoting *Bell v. Vacuforce, LLC*, 908 F.3d 1075, 1082 (7th Cir. 2018)). "The standard for objective bad faith does not require a finding of malice or ill will; reckless indifference to the law will qualify." *Dal Pozzo v. Basic Mach. Co.*, 463 F. 3d 609, 614 (7th Cir. 2006) (*citing In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985)). "Because trial judges are best positioned to detect bad faith litigation conduct, they possess broad discretion in exercising the § 1927 power." *Lisse*, 921 F.3d at 641.

Section 1927 sanctions may be imposed for either factual claims or legal arguments without support. "Under § 1927, sanctions for filing a baseless claim properly may be imposed where those claims are not supported by the facts." *Walter v. Fiorenzo*, 840 F.2d 427, 435 (7th Cir. 1988) (affirming award against counsel for filing complaint without sufficient factual basis against a defendant). The Seventh Circuit "has upheld section 1927 sanctions ... [when] counsel

raised baseless claims despite notice of the frivolous nature of these claims..." *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184 (7th Cir. 2003) (collecting cases).

The Court also has the inherent power to "assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975)). Whether under Section 1927 or the Court's inherent authority, it may sanction counsel "for willfully abusing the judicial process and/or pursuing a bad-faith litigation strategy by initiating this litigation in a patently inappropriate forum." *Boyer v. BNSF Ry. Co.*, 832 F.3d 699, 702 (7th Cir. 2016).

## ARGUMENT

### I. Dismissal of the Second Action Made PopMatters the Prevailing Party in this Action.

Though this action was dismissed by notice on December 17, 2018, PopMatters did not prevail until Liebowitz filed a second notice of dismissal, in the second action, on October 19, 2019. Ex. L. Judgment entered on October 21, 2019. Ex. M. This motion is timely because it is filed no later than fourteen days later. Fed. R. Civ. P. 54(d)(2)(B)(i); Fed. R. Civ. P. 6(a)(1)(C).

When this action was originally dismissed, PopMatters was not yet the prevailing party for purposes of Section 505 because the dismissal was without prejudice under Fed. R. Civ. P. 41(a)(1). Doc. 8. Ordinarily a Rule 41(a)(1) voluntary dismissal is without prejudice, providing no basis for an award of costs and fees to the prevailing party. But "the filing of a second suit on the same claim allows the court to award the costs of the first case." *Szabo Food Serv. v. Canteen Corp.*, 823 F.2d 1073, 1077 (7th Cir. 1987). The voluntary dismissal of that second suit has the same effect under the two-dismissal rule, because the second "notice of dismissal operates as an adjudication on the merits."  Fed. R. Civ. P. 41(a)(1)(B). That notice converted the dismissal to one with prejudice, and rendered PopMatters the prevailing party in this action. *See Mother & Father v. Cassidy*, 338 F.3d 704, 707 (7th Cir. 2003) (prevailing party status under Fed. R. Civ.

P. 54 arises upon dismissal with prejudice). "A cave-in by the defendant may support an award of fees to the plaintiff without a judicial declaration of relief …. Capitulation or settlement is the practical equivalent of success. Surrender by the plaintiff should be treated similarly." *Szabo*, 823 F.2d at 1077) (internal citations omitted).

To prevail, a defendant does not require "a judgment vindicating its position regarding the substantive merits of the plaintiff's allegations." *CRST Van*, 136 S. Ct. at 1646. "There is no indication that Congress intended that defendants should be eligible to recover attorney's fees only when courts dispose of claims on the merits." *Id.* Rather, "a litigant 'prevails' (for the purpose of fee-shifting statutes) when it obtains a 'material alteration of the legal relationship of the parties.'" *Riviera*, 517 F.3d at 928 (quoting *Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598, 604 (2001)). "A voluntary dismissal of an action with prejudice works such alteration, because it constitutes an adjudication on the merits for purposes of *res judicata*, and any action so dismissed could not be brought again." *Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 165 (2d Cir. 2014) (internal quotation and citation omitted). "Because Plaintiff[] cannot refile, the judgment has materially altered the parties' legal relationship." *Id.* at 166 (citing *Buckhannon*, 532 U.S. at 604). Accord *Claiborne v. Widsom*, 414 F.3d 715, 719 (7th Cir. 2005); *Green Aviation Mgmt. Co., LLC v. FAA*, 676 F.3d 200, 205 (D.C. Cir. 2012) (withdrawn complaint conferred prevailing party status where "dismissal with prejudice has *res judicata* effect"). The second dismissal had *res judicata* effect; it was "with prejudice and thus could cause claim preclusion." *CFE Grp.*, 809 F.3d at 351 n. 1.

The *res judicata* voluntary dismissal has the effect of a judicial order affording relief to PopMatters because it flows directly from Rule 41, as promulgated by the Supreme Court. See *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 391 (1990). And "nothing in the language of Rule 41(a)(1)(i), Rule 11, or other statute or Federal Rule terminates a district court's authority to impose sanctions after such a dismissal." *Id.* at 395 (citing among others *Szabo*, 823 F.2d at 1076-79). Likewise, the Court may impose Section 1927 sanctions after a plaintiff's voluntary

dismissal. See *Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 703-04 (7th Cir. 2014). At least one district court, applying *CRST Van* under the Copyright Act, has found that a copyright "plaintiff's notice of voluntary dismissal of defendant makes defendant a 'prevailing party' for purposes of the applicable fee-shifting statute." *Criminal Productions, Inc. v. Jenkins*, No. 2:16-CV-2704 JCM (PAL), 2018 U.S. Dist. LEXIS 52706, *13 (D. Nev. Mar. 29, 2018) (citing *CRST Van*, 136 S. Ct. at 1651). Other courts have found that *CRST Van* supports Section 505 awards to defendants even if the district court did not reach the merits, as when the plaintiff lacked standing, *Small Justice LLC v. Xcentric Ventures LLC*, 873 F.3d 313, 327-28 (1st Cir. 2017), *TufAmerica, Inc. v. Diamond*, No. 12-cv-3529 (AJN), 2016 U.S. Dist. LEXIS 90461, *4 n. 1 (S.D.N.Y. July 12, 2016), or was "incapable of maintaining an action" based on collateral estoppel, *Manhattan Review LLC v. Yun*, 919 F.3d 149, 153 (2d Cir. 2019).

Even before *CRST Van*, a defendant could qualify as a prevailing party when a plaintiff voluntarily dismissed if the defendant could "demonstrate that the plaintiff withdrew to avoid a disfavorable judgment on the merits." *Dean v. Riser*, 240 F.3d 505, 511 (5th Cir. 2001). Due to Liebowitz's tactics, courts routinely find cause to expect that he will "voluntarily dismiss the case to avoid paying defendant any fees it may be owed." *Lee v. W Architecture & Landscape Architecture, LLC*, No. 18-cv-5820 (PKC) (CLP), 2019 U.S. Dist. LEXIS 89335, *4 (E.D.N.Y. May 28, 2019). That pattern is evident in the record of this case. It was baseless to file suit in this venue, lacking personal jurisdiction over PopMatters. Liebowitz privately recognized that the case did not belong here as soon as PopMatters pointed it out, and offered to transfer. Ex. F p. 1. PopMatters demanded that he withdraw the case immediately or face sanctions for imposing "the senseless, wasteful costs of a motion to dismiss." *Id.* Yet he dithered and took months to withdraw, compounding PopMatters' expenses through dilatory tactics. Booth Decl. ¶¶ 17-19. When he renewed suit, again months later, he did not dispute that PopMatters' use of the Photograph under license was not an infringement, and acknowledged that the copyright registration raised in both actions was not a valid basis for suit. *Id.* ¶ 21, Ex. K. Yet he again

waited months to dismiss, until the day after PopMatters' Rule 41(d) motion. *Id.* ¶ 23, Ex. L. Liebowitz showed no interest in litigating the merits, because the case had none, but he dragged PopMatters into putative litigation through two courts for more than a year. Having rebuffed his claims, PopMatters is now entitled to seek its fees as the prevailing party.

## II.    The Copyright Act Supports Awarding PopMatters Its Reasonable Attorney's Fees.

All relevant considerations support an award of attorney's fees under the Copyright Act. Liebowitz staked out objectively unreasonable, overly aggressive positions for Craig; raised an infringement claim too frivolous to bother trying to prove; and engaged in bad-faith, strong-arm tactical gamesmanship. This unjustifiable lawsuit calls for deterrence and due compensation.

The Court "should give substantial weight to the objective reasonableness of the losing party's position." *Kirtsaeng*, 136 S. Ct. at 1983. Yet "objective reasonableness can be only an important factor in assessing fee applications—not the controlling one." *Id.* at 1988. Thus, "a court may order fee-shifting … to deter … overaggressive assertions of copyright claims, again even if the losing position was reasonable in a particular case." *Id.* at 1989 (citing *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 595 (6th Cir. 2008)).

It was objectively unreasonable, if not frivolous or in bad faith, that the complaint alleged personal jurisdiction over PopMatters because it is based elsewhere in Illinois, and asserted venue under 28 U.S.C. § 1391(b). Doc. 1 ¶¶ 3-4. Those allegations were meritless. A different statute, 28 U.S.C. § 1400(a), exclusively governs copyright venue. See *Lumiere v. Mae Edna Wilder, Inc.*, 261 U.S. 174 (1923), *Atl. Marine Constr. Co. v. United States Dist. Ct.*, 571 U.S. 49, 55 n.2 (2013). It specifies that an action "may be instituted *in the district* in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a) (emphasis added). "Thus, section 1400(a) itself requires that a defendant be found in a particular judicial district, rather than in the state in which the district court sits." *Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co.*, 8 F.3d 441, 446 (7th Cir. 1993). And "section 1400(a)'s 'may be found' clause has been interpreted to mean that a defendant is amenable to personal jurisdiction in a particular forum."

*Id.* at 445. "A defendant's amenability to personal jurisdiction must relate to the judicial district in which the action was filed to place venue there under section 1400(a)." *Id.* "The section 1400(a) inquiry must … focus on contacts with the particular federal judicial district in which the copyright action has been filed." *Id.* at 446. So courts in this Circuit analyze venue in copyright infringement cases by treating each judicial district as if it were its own state. *Philpot v. Gray TV, Inc.*, No. 14-cv-01977-JMS-DML, 2015 U.S. Dist. LEXIS 41662, *2-3 (S.D. Ind. Feb. 20, 2015).

PopMatters does not reside or transact business or have a place of business in this district. Zarker Decl. ¶ 2. Knowing that PopMatters was based in Chicago made it improper to sue anywhere else. See Doc. 1 ¶ 6. There was no plausible basis in law to sue it here.

Or anywhere else. The allegations about Craig's copyright registration were not just unreasonable; Liebowitz admits that the registration he relied on was simply "incorrect." Ex. K. He alleged that the copyright was registered in a collection of Miles Davis photos. Doc. 1 ¶ 9; Doc. 1-2. The registration number's "VAu" prefix indicates that Craig identified the collection as works of the visual arts ("VA") that were unpublished ("u") when he applied for the registration on November 20, 2014.[1] *Id.* But the Photograph had been published in *Fillmore* on March 25, 2014. Ex. C, Ex. D p. 9. Even earlier, by February 18, 2014, Craig had offered Legacy a license to publish the Photograph in *Fillmore* and to license it for further publication to media outlets like PopMatters. Ex. B. Those licenses fit within the Copyright Act's definition of publication: "The offering to distribute copies … to a group of persons for purposes of further distribution … constitutes publication." 17 U.S.C. § 101. The Copyright Office consistently advises that it is improper to claim published works among an unpublished collection.[2] It was unreasonable for

---

[1] 37 C.F.R. § 202.3(b)(1)(iii) ("VA"); *Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc.*, 896 F.Supp.2d 223, 225 (S.D.N.Y. 2012) ("The 'u' represents that the works are unpublished.").
[2] "A published design included in an unpublished collection copyright registration application cannot be registered as part of the collection." *Urban Textile, Inc. v. Cato Corp.*, No. 14-cv-06967-ODW(FFMx), 2016 U.S. Dist. LEXIS 193921, *12 (C.D. Cal. Apr. 1, 2016) (citing U.S. Copyright Office, Compendium (Second) of Office Practices §§ 1507.07(a) & (b)). See also *Olander Enters., Inc. v. Spencer Gifts, LLC*, 812 F. Supp. 2d 1070, 1076 (C.D. Cal. 2011) ("To register multiple individual works contained in the same unit of publication with a single

Liebowitz, the copyright bar's most active litigant, to treat a registration obtained by a false claim that the work was unpublished as a proper basis for suit.

It was also more than unreasonable to allege that PopMatters "is not, and has never been, licensed or otherwise authorized to reproduce, publically display, distribute and/or use the Photograph." Doc. 1 ¶ 13; see also *id*. ¶ 11. Craig had expressly permitted it. His license to Legacy allows use of the Photograph "for publicity." Ex. B. In turn, Legacy licensed "editorial uses" by PopMatters and other "Internet review outlets" online. Ex. E. Licensed use is not infringement. *I.A.E., Inc. v. Shaver*, 74 F.3d 768 (7th Cir. 1996).

It also appears that the Photograph was a work made for hire, so Craig had no standing to sue. Because the Davis series was "created before 1978, the Copyright Act of 1909 governs the validity of the initial copyright[.]" *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F. 3d 1322, 1325 (9th Cir. 2000) (citing *Roth v. Pritikin*, 710 F.2d 934, 938 (2d Cir. 1983)); accord *Everts v. Arkham House Publ'rs, Inc.*, 579 F. Supp. 145, 148 (W.D. Wisc. 1984). "The 1909 Act provided protection for the 'authors' of copyrights, and defined 'author' to include an employer in the case of 'works made for hire.'" *Real Estate Data, Inc. v. Sidwell Co.*, 809 F.2d 366, 371 (7th Cir. 1987) (quoting 17 U.S.C. § 26 (1909 Act)). "The general rule is that, in the absence of an agreement to the contrary, the copyright belongs to the person commissioning the work, not the person creating the work." *Id.* (collecting cases).

> The work-for-hire doctrine of the 1909 Act does not foreclose an agreement between the parties that the contractor shall own the copyright, but rather it simply establishes a rebuttable presumption that can be overcome by evidence of a contrary agreement, either written or oral. … The intent of the parties is … the decisive factor, and the burden is on the independent contractor to demonstrate by a preponderance of the evidence that such an agreement was reached.

*Id.* (citations omitted). Courts construing the 1909 Act "generally presumed that the

---

application, the following requirements must be met: This publication must represent first publication of all of the works included in the registration. *The registration must exclude any previously published work.*") (quoting U.S. Copyright Office, *Help: Type of Work*, https://www.copyright.gov/eco/help-type.html (emphasis added)).

commissioned party had impliedly agreed to convey the copyright, along with the work itself, to the hiring party." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 744 (1989). This was an "almost irrebuttable presumption." *Easter Seal Soc'y for Crippled Children & Adults of La., Inc. v. Playboy Enters.*, 815 F.2d 323, 327 (5th Cir. 1987) (collecting cases). Craig has identified no contrary agreement retaining any copyright in the Davis series photographed for *Zygote*. His unattested claim of ownership is insufficient. Doc. 1 ¶ 8. His certificate of copyright registration, Doc. 1-2, obtained four decades after *Zygote* folded and its publisher dissolved, creates "simply a rebuttable presumption" of validity. *Mid. Am. Title Co. v. Kirk*, 59 F.3d 719, 721 (7th Cir. 1995). "Where other evidence in the record casts doubt on the question, validity will not be assumed." *Durham Indus. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1980). By all available evidence the Davis series, including the Photograph, was taken as work for hire at the publisher's instance and expense, not on Craig's initiative. He shot the series "on a prearranged assignment for *Zygote* magazine," accompanied by *Zygote*'s reporter, including at the Fillmore. Ex. A. Craig "photograph[ed] Miles in 1970 for Zygote magazine" after *Zygote* editor Peter Knobler "originally commissioned the Craig photo essay." Booth Decl. ¶¶ 25-27, Ex. N.

So Craig did not own the copyright, claim a valid registration, or sue in a proper venue, and he authorized PopMatters to use the Photograph. And independent of those mortal wounds to his claim, Liebowitz's demands were also unreasonable on their face. He pushed for a $25,000 settlement. Ex. F p. 4. Yet Craig had licensed the Photograph among thirteen photographs in *Fillmore*, and for published reviews, for just $5,000, or $384.62 apiece. Ex. B. Had PopMatters needed a license on top of what Legacy provided, Getty Images' pricing utility set a benchmark licensing rate of just $154 for broader usage of highly comparable photographs: other black-and-white shots of Miles Davis performing onstage in the summer of 1970. See Ex. F pp. 3-4. Liebowitz's denial that Getty Images' licensing rates were "relevant at all" was in bad faith. *Id.*

He often asks courts to find "the fair market value of a license … based on what Getty Images charges to license a similar photograph to a commercial online blog." *Romanowicz v. Alister & Paine*, No. 17-cv-8937, 2018 U.S. Dist. LEXIS 132066, *10 (S.D.N.Y. Aug. 3, 2018); accord *Terry v. Masterpiece Advertising Design*, No. 17-cv-8240 (2018 U.S. Dist. LEXIS 104667, *10 (S.D.N.Y. June 21, 2018) (Liebowitz client "relies on Getty's pricing utility to support his determination of a reasonable license fee"). Even after dismissing this action of barely nominal value, he renewed suit and pressed for $10,000. Ex. K. His vexatious tactics were designed to protract litigation to coerce PopMatters into paying an unwarranted settlement. His inordinate demands, orders of magnitude higher than a reasonably comparable license, were unreasonable.

In a case filed in the wrong court without evidence to support standing or infringement, an order requiring Craig to pay PopMatters' fees under the Copyright Act is fully warranted. He has avoided financial sanction when misrepresented by Liebowitz elsewhere. See *Craig v. UMG Recordings, Inc.*, 380 F. Supp. 3d 324, 338-39 (S.D.N.Y. 2019) (sanctioning Liebowitz and his firm for filing a "meritless motion" but "declin[ing] to sanction Craig himself"). Liebowitz is often sanctioned; he "has earned the dubious distinction of being a regular target of sanctions-related motions and orders." *Rice v. NBC Universal Media, LLC*, No. 19-cv-447 (JMF), 2019 U.S. Dist. LEXIS 114690, *1 (S.D.N.Y. July 10, 2019) (discovery sanctions).[3] Yet he brushes it

_____

[3] See also *Steeger v. JMS Cleaning Servs., LLC*, No. 17-cv-8013 (DLC), 2018 U.S. Dist. LEXIS 32730 (S.D.N.Y. Feb. 28, 2018) (Rule 11/inherent power sanctions), *modified in part*, 2018 U.S. Dist. LEXIS 42797 (S.D.N.Y. Mar. 15, 2018); *Mantel v. Microsoft Corp.*, No. 16-cv-5277 (AJN), 2018 U.S. Dist. LEXIS 53549 (S.D.N.Y. Mar. 29, 2018) (sanctions for failure to produce discovery); *Anderson v. Outhouse PR, LLC*, No. 17-cv-6722-LTS-BCM (S.D.N.Y. Apr. 2, 2018) (Rule 37(b)(2)(C) sanctions); *Romanowicz*, No. 17-cv-8937 (S.D.N.Y. June 22, 2018) (fine for failure to comply with court orders); *Tabak v. Itsbizkit, LLC*, No. 17-cv-02962 (E.D.N.Y. Aug. 22, 2018) (dismissal for failure to prosecute); *Ferdman v. CBS Interactive, Inc.*, 342 F. Supp. 3d 515, 527-30 (S.D.N.Y. Sept. 21, 2018) (sanctions for failure to produce discovery); *Seidman v. GAX Productions, LLC*, No. 18-cv-02048 (S.D.N.Y. Oct. 5, 2018) (same); *Chicoineau v. Bonnier Corp.*, No. 18-cv-3264-JSR (S.D.N.Y. Oct. 9, 2018) (sanctions for failure to appear); *Sands v. Bauer Media Group USA, LLC*, No. 17-cv-9215 (LAK), 2019 U.S. Dist. LEXIS 160421 (S.D.N.Y. Sept. 18, 2019) (Rule 26 and 37(c) discovery sanctions); *Berger v. Imagina Consulting, Inc.*, No. 18-cv-08964-CS (S.D.N.Y. Sept. 27, 2019) (contempt sanctions); *In re Liebowitz*, No. 19-mc-80228-JD (N.D. Cal. Oct. 7, 2019) (order of disbarment for unauthorized

off. Some courts find that sanctioning Liebowitz himself "clearly has had no deterrent effect." *Stelzer v. Lead Stories LLC*, No. 19-cv-743-PAB-KMT, 2019 U.S. Dist. LEIS 178345, *9 (D. Colo. July 3, 2019). Deterring Liebowitz's improper methods will require awards against his clients, to give them a greater incentive to compel Liebowitz to discipline himself.

### III. Liebowitz Should Be Required to Pay PopMatters' Reasonable Attorney's Fees Under 28 U.S.C. § 1927 or the Court's Inherent Authority.

In the alternative, under 28 U.S.C. § 1927 and the Court's inherent authority, Liebowitz and his firm should be required to pay the fees PopMatters reasonably incurred in this action. He is directly responsible for the indefensible litigation tactics employed in this action, and he should be held accountable. Insisting that the use was a *willful* infringement, with no evidence that PopMatters had anything other than a good-faith belief that its use comported with Legacy's license, breached Liebowitz's duties under Fed. R. Civ. P. 11(b)(3). Doc. 1 ¶¶ 15 & 17, Ex. F p. 3. So did failing to review the copyright registration to ensure it covered the Photograph, for more than a year after filing suit. The months spent failing to prosecute, as PopMatters wasted time and energy prodding to have the case handled expeditiously, were entirely within Liebowitz's control. And copyright venue may be an esoteric matter for Craig, but it is Liebowitz's bread and butter.[4] All fees incurred in this action, where venue and personal jurisdiction were improper, constitute "excess" attorney's fees under Section 1927. To initiate suit in this Court, then dismiss and resurrect it only to dismiss again a day after PopMatters'

---

practice); *Polaris Images Corp. v. CBS Interactive, Inc.*, No. 19-cv-3670 (VEC), 2019 U.S. Dist. LEXIS 175618 (S.D.N.Y. Oct. 9, 2019) (Rule 16(f) sanctions for failure to obey court order).

[4] Well before this action, Liebowitz had often been taken to task for bringing suit without a "non-frivolous basis to find that there is personal jurisdiction" or proper venue. *McDermott v. Monday Monday LLC*, No. 17-cv-9230 (DLC), 2018 U.S. Dist. LEXIS 28664, *8-9 (S.D.N.Y. Feb. 22, 2018); see also *Tabak v. Idle Media, Inc.*, No. 17 Civ. 8285 (AT), 2017 U.S. Dist. LEXIS 219504 (S.D.N.Y. Oct. 31, 2017) (Order to Show Cause) ("plaintiff has not demonstrated that venue is proper in this district"); *Reynolds v. Intermarkets, Inc.*, No. 17 Civ. 8795 (AT), 2017 U.S. Dist. LEXIS 219505 (S.D.N.Y. Nov. 14, 2017) (same); Order, *Pena v. Celebrities Unlimited, Inc.*, No. 17-cv-1853 (S.D.N.Y. Feb. 27, 2018) (transferring venue); Order, *Polaris Images Corp. v. The Wrap News, Inc.*, No. 18-cv-6218 (S.D.N.Y. Aug. 15, 2018) (same).

counsel entered their appearances, literally "multiplied the proceedings" for purposes of the statute. All of these vexatious tactics exhibited objective bad faith subject to sanction.

More should be expected from one of the federal courts' most frequent fliers. Liebowitz "has filed more than 1,600 copyright lawsuits over the past four years," and in 2019 alone, "a whopping 668 cases as of Oct. 10, making him easily the most prolific copyright attorney in the nation." Bill Donahue, *As 'Copyright Troll' Turns National, Will Blowback Follow?*, Law360 (Oct. 11, 2019) https://www.law360.com/articles/1208101, Booth Decl. ¶ 28, Ex. O p. 1. Almost one out of every six copyright suits filed in the United States this year is his work. *Id*. ¶¶ 28-29.

The Seventh Circuit has been critical of Liebowitzian litigation since before he was born:

> Suits are easy to file and hard to defend. Litigation gives lawyers opportunities to impose on their adversaries costs much greater than they impose on their own clients. The greater the disparity, the more litigation becomes a predatory instrument rather than a method of resolving honest disputes.

*In re TCI, Ltd*., 769 F.2d 441, 446 (7th Cir. 1985). It has long upheld the remedy: Section 1927. "When an attorney recklessly creates needless costs the other side is entitled to relief." *Id.*

"The copyright holder with no reasonable infringement claim has good reason not to bring suit in the first instance (knowing he cannot force a settlement and will have to proceed to judgment)[.]" *Kirtsaeng*, 136 S. Ct. at 2016. Liebowitz had no sound reason to bring this suit in this Court, and no interest in litigating to judgment in any court. Permitting him to freely dip in and out of court on unreasonable claims at will, solely for their *in terrorem* effect, would defeat the purposes of the Copyright Act and contravene the orderly pursuit of justice.

## IV.   PopMatters Should Be Awarded All Fees It Reasonably Incurred in this Action.

This action was vexatious from its inception. All time spent and all attorneys' fees incurred on this action should be compensated because it was necessitated by Craig's vexatious litigation conduct through Liebowitz, from filings willfully wrong or insufficiently considered, to his failure or refusal to communicate about his delayed, belated, half-hearted attempts to rectify those filings. As detailed in counsel's attached Declaration, PopMatters' fees were reasonable

and reasonably incurred. PopMatters spent a reasonable amount of time responding to the issues raised in this action. Booth Decl. ¶ 30 & Ex. P. Its counsel charged its standard rate of $425 per hour, well within the usual range charged in intellectual property litigation by similarly experienced attorneys in this Court. *Id.* ¶¶ 31-33. Counsel's actual billing rate is "presumptively reasonable." *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1311 (7th Cir. 1996). Six years ago, this Court awarded a client of PopMatters' counsel his fees under 28 U.S.C. § 1927, from the inception of suit, at counsel's then-current rate of $409 per hour. *Lightspeed Media Corp. v. Smith*, No. 12-cv-889, 2013 U.S. Dist. LEXIS 168615, *19 (S.D. Ill. Nov. 27, 2013), *aff'd*, 761 F.3d 699 (7th Cir. 2014). The District Court Judge presiding in that case commented, "that's what you call bargain rates around here." *Id.*, ECF No. 101 at 17:11-13 (S.D. Ill. filed Dec. 10, 2013) (hearing transcript). See also Order, *Broadcast Music Inc. v. B & B Entm't, Inc.*, No. 3:14-cv-01337-JPG-PMF (S.D. Ill. Aug. 30, 2016) (awarding $500 per hour to lead counsel in copyright case "[p]er the prevailing rate" in this judicial district).

PopMatters requests an award of only its fees incurred in this action, not the second action. "As a general rule, a motion seeking an award of attorney fees should be sought in the court or tribunal in which those fees were incurred, unless some statute, court order, or rule requires another procedure." *Schmude v. Sheahan*, 318 F. Supp. 2d 606, 640 (N.D. Ill. 2004) (quoting Mary Francis Derfner & Arthur D. Wolf, *Court Awarded Attorney Fees* § 18.05[1] at 18-69 (rev. ed. 2003)), *rev'd on other grounds*, 420 F.3d 645 (7th Cir. 2005). PopMatters incurred 60.2 hours on this action, plus 29.2 hours preparing this Motion, also compensable. Booth Decl. ¶ 35, Ex. P. For those 89.4 hours, PopMatters seeks to recover $37,995 total. *Id.*

## V.     Conclusion.

Wherefore, PopMatters Media, Inc. respectfully moves this Court to order Glen Craig to pay its costs incurred in this action, specifically its reasonable attorney's fees, pursuant to 17 U.S.C. § 505; or, instead, to order Richard Liebowitz and Liebowitz Law Firm LLC to pay those fees pursuant to 28 U.S.C. § 1927 and the Court's inherent authority.

Dated: November 4, 2019     Respectfully submitted,

          / s /  Dan Booth
          Dan Booth
          Dan Booth Law LLC
          60 Thoreau Street #121
          Concord, MA 01742
          dan@danboothlaw.com

          *Counsel for Defendant PopMatters Media, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this November 4, 2019, the foregoing Motion and its Exhibits (A through P), filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to any identified non-registered participants for whom a mailing address is provided.

          / s /  Dan Booth
          Dan Booth